IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AMY M. YOUNG, : <br> : <br> Plaintiff, : <br> : Civil No. 23-484 (RBK/SAK) <br> v. : <br> : **OPINION** <br> WELLS FARGO AUTO, : <br> : <br> Defendant. : <br> : | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant Wells Fargo Auto's ("Defendant") Motion to Dismiss Plaintiff's Complaint ("Compl.") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion" or "Mot."). (ECF No. 19). For the reasons set forth below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

   **A.    Factual Background[1]**

This dispute arises from contracts for two vehicles—a 2018 Mercedes-Benz CLA 250 and a 2018 Jeep Grand Cherokee—that Ms. Young entered in late 2021. (Compl. at 3). Both vehicles were purchased from a dealership in Westampton, New Jersey. (Mot., Ex. A at 2, 7). According to the contracts, Ms. Young financed the vehicles and was due to make monthly payments over 72 months. (*Id.*). A notice appears on the first page of both contracts in bold, capital letters: "NO COOLING OFF PERIOD." (*Id.*). The notice continues:

---

[1] This background includes facts taken from Ms. Young's vehicle contracts, which the Court will consider in ruling on the present Motion even though Ms. Young did not attach them as exhibits to her Complaint. *See infra* Parts II.B, III.

1

> State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

(*Id.*). Ms. Young signed the contract for the Mercedes-Benz on October 15, 2021, with her first monthly payment due on November 13, 2021. (*Id.* at 2, 6). She signed the contract for the Jeep on October 27, 2021, with her first monthly payment due on November 26, 2021. (*Id.* at 7, 11).

Ms. Young, who is proceeding *pro se*, makes three specific allegations in her Complaint. First, Ms. Young alleges that Wells Fargo Auto violated 15 U.S.C. § 1635, part of the larger Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, by "not disclosing my right to rescission" in both contracts. (Compl. at 3). Second, she states that her vehicles were "disabled due to dispossession of property." (*Id.*). Third, she accused Wells Fargo Auto of violating her civil rights "by causing me to make unlawful payments on a fraudulent contract." (*Id.*).

Ms. Young cites three other federal statutes allegedly violated by Wells Fargo Auto but does not tie them to specific factual allegations. The statutes are 15 U.S.C. § 1605, also part of the TILA, and 15 U.S.C. §§ 1692 and 1692f(6), part of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (*Id.* at 2).

As a result of the alleged conduct, Ms. Young claims she has suffered injuries including depression, anxiety, loss of employment, and the inability to take her son to school. (*Id.* at 4). In addition, she alleges that "my reputation was damaged due to credit reporting from Wells Fargo Auto" that hindered her from exercising "my right to obtain credit." (*Id.*).

Ms. Young seeks $80,000 in damages, title to her vehicles, and the removal of reporting related to the vehicles from her credit reports. (*Id.*).

### B. Procedural Background

Plaintiff filed her Complaint in the United States District Court for the Eastern District of Pennsylvania on November 8, 2022. (ECF No. 1). On December 6, 2022, Defendant filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 5). After briefing on that motion, (ECF Nos. 6–8), the Hon. Chad F. Kenney agreed that the court did not have personal jurisdiction over Defendant and transferred the case to the United States District Court for the District of New Jersey on January 26, 2023. (ECF Nos. 11–12).

In the new venue, Plaintiff expressed a desire to amend her Complaint, and the Court set a deadline of June 23, 2023, for Plaintiff to file an appropriate motion. (ECF No. 16). At Plaintiff's request, the deadline was extended once to July 12, 2023. (ECF No. 18). Upon Plaintiff's failure to file a motion to amend, Defendant filed the present Motion to Dismiss on July 18, 2023. Attached to the Motion were a brief ("Def.'s Brief") (ECF No. 19-2) and copies of the two vehicle contracts signed by Plaintiff. (Mot., Ex. A). Plaintiff did not respond to Defendant's Motion.

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which the court can grant relief. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a

motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**B.     Consideration of Extraneous Matters in Motion to Dismiss**

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). If a district court does consider extraneous evidence submitted by the defense, the general rule is that the court must convert the motion into one for summary judgment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The purpose of the rule is to "afford the plaintiff an opportunity to respond." *Id*.

However, an exception to the general rule exists for a "document *integral to or explicitly relied* upon in the complaint," which the court may consider without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original). Put another way, "a court may consider an

4

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. This exception is justified because concerns about lack of notice to the plaintiff are "dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (internal quotation marks and punctuation omitted). Moreover, if not for this exception, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

### C. Standard to Construe *Pro Se* Filings

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). The Third Circuit has emphasized that district courts should "be flexible when applying procedural rules to *pro se* litigants, especially when interpreting their pleadings." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Further, courts should be mindful of their duty "to apply the relevant legal principle even when the complaint has failed to name it." *Id*. That said, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id*. at 245.

### III. DISCUSSION

As a preliminary matter, the Court in ruling on the present Motion will consider Ms. Young's two vehicle contracts, which were not attached by Ms. Young as exhibits to the Complaint but rather attached by Defendant as an exhibit to the Motion. (Mot., Ex. A). The Court finds that these contracts fall squarely within the exception to the general prohibition on

considering matters extraneous to the pleadings. First, the contracts are "undisputedly authentic." *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Defendant first attached the contracts to their motion to dismiss for lack of personal jurisdiction in the Eastern District of Pennsylvania. (ECF No. 5, Ex. A). In response, Plaintiff did not dispute the authenticity of the contracts but rather submitted portions of identical copies with handwritten, explanatory notes in the margins. (ECF No. 6 at 1–7). Further, the dates listed in the contracts as to when Plaintiff's first monthly payments are due match dates in the Complaint. (Compl. at 3). Finally, by virtue of not responding to the present Motion, Plaintiff has not disputed before this Court the authenticity of the contracts. Therefore, the Court considers the contracts undisputedly authentic.

Second, Plaintiff's claims are "based on" the contracts, *see Pension Ben. Guar. Corp.*, 998 F.2d at 1196, or stated another way, are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Plaintiff explicitly cites the contracts twice in her complaint, once in alleging that Defendant failed to disclose in the contracts her right to rescission and again in alleging that Defendant caused her to make unlawful payments on a fraudulent contract. (Compl. at 3). Moreover, the contracts are essential to Plaintiff's claims, as an allegation of a key omission or fraudulent terms make little sense without reference to the underlying documents. Thus, the Court finds the contracts are both integral to and explicitly relied upon in Plaintiff's Complaint, and the Court will consider them without converting the present Motion into one for summary judgment. Not considering the contracts could allow Plaintiff's claims to survive the present Motion "simply by failing to attach a dispositive document" on which the claims rely. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

We now turn to Plaintiff's claims that Defendant violated (1) the Truth in Lending Act, (2) the Fair Debt Collection Practices Act, and (3) her civil rights by causing her to make payments on fraudulent contracts.

### A.     Truth in Lending Act Claims

Plaintiff alleges that Defendant violated § 1635 of the TILA in failing to disclose in the vehicle contracts her right to rescind her loans. (Compl. at 3). She also alleges a violation of § 1605, which standardizes how to compute the "finance charge" associated with consumer credit transactions, although she does not specify how that code section was violated. (*Id*. at 2). In response, Defendant argues that Plaintiff's TILA claims are barred by a one-year statute of limitations. (Def.'s Brief at 3).[2] In the alternative, Defendant argues the claims should fail because the right to rescind under § 1635 does not apply to auto loans and the TILA does not impose liability on assignees, such as Defendant, for disclosure violations that are not apparent on the face of the contract. (*Id*. at 3–5).

#### i.     *Statute of Limitations*

Claims under the TILA are generally subject to a one-year statute of limitations, which begins to run from the date the loan closed. 15 U.S.C. § 1640(e); *see also In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 303 (3d Cir. 2010), *as amended* (Oct. 20, 2010); *West v. Wells Fargo Auto*, 2023 WL 199676, at *4 (E.D. Pa. Jan. 17, 2023). However, the statute is subject to equitable tolling in situations where a defendant has fraudulently concealed the facts underlying a TILA violation. *Polkampally v. Countrywide Home Loans Inc.*, 2013 WL 5937000, at *6 (D.N.J. Nov. 6, 2013) (citing *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505 (3d Cir.

---

[2] Citations to portions of Defendant's Brief correspond to the page numbers assigned by Defendant, not by ECF.

1998)). Separately, plaintiffs can assert their right to rescind a loan under § 1635 for up to three years if a lender fails to deliver the required disclosures. § 1635(f); *see also Franklin v. Fin. Freedom Acquisition*, 2014 WL 1316093, at *4 (D.N.J. Apr. 1, 2014).

Here, Plaintiff alleges that Defendant failed to disclose her right to rescind her loans, as required by § 1635. Such a violation would give Plaintiff three years from the date the loan was closed to rescind her loans. The dates the vehicle contracts were signed and thus the loans closed were October 15, 2021, and October 27, 2021 (Compl., Ex. A at 6, 11).[3] When Plaintiff filed her complaint on November 8, 2022, she was therefore within the three-year window. Plaintiff's claim under § 1635 is not time-barred.

In contrast, Plaintiff's claim under § 1605 is subject to the TILA's general one-year statute of limitations. § 1640(e) (operating in tandem with § 1638(a)(3)). Because Plaintiff filed her complaint more than one year from the date that her loans closed, and because she has pleaded no facts to suggest that equitable tolling should apply, she is barred from relief for the alleged violation of § 1605. That said, the Court will proceed to analyze whether a violation of § 1605 occurred. A lender's failure to deliver material disclosures, including those required by § 1605, can be an independent basis to extend the rescission period under § 1635 to three years. 12 C.F.R. § 226.23(a)(3) (2023) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation. . . ."); *see also In re Wright*, 133 B.R. 704, 709–10 (E.D. Pa. 1991) (violation of § 1605 gave consumer the right to rescind under

---

[3] In her Complaint, Plaintiff lists November 13, 2021, and November 26, 2021, as the dates of the violations giving rise to her claims. (Compl. at 3). These dates, however, are the dates her first payment on each contract was due, not the dates the loans were closed. (Mot., Ex. A at 2, 7). The Court determines whether Plaintiff's TILA claims are time-barred in reference to the dates the loans were closed.

8

§ 1635). This is true even if Plaintiff cannot recover on the underlying § 1605 violation. *See In re Wright*, 133 B.R. at 708–09.

> ii. **Section 1635**

The TILA is intended to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." § 1601(a). "Because the TILA is a remedial consumer protection statute . . . it should be construed liberally in favor of the consumer." *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390 (3d Cir.2002) (internal quotation marks and citation omitted). To achieve this end, the statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998), and imposes strict liability on creditors who fail this mandate. *See* § 1640(a) ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person.").

By its plain terms, § 1635 applies only to certain transactions involving real property. Section 1635(a) gives consumers a right to rescind "any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended." § 1635(a) (emphasis added). Courts interpreting this code section have consistently held that it does not apply to motor vehicle transactions. *See Wiggins v. Cap. One Auto Fin.*, 2023 WL 4348730, at *5 (D.N.J. July 5, 2023) (collecting cases).

Here, the facts alleged in Plaintiff's Complaint relate solely to auto loans. Because § 1635 is not applicable to auto loans, Plaintiff fails to state a claim under that code section on which relief could be granted. Accordingly, her claim under § 1635 must be dismissed. The Court need

not address Defendant's argument in the alternative that the TILA does not impose liability on assignees for disclosure violations that are not apparent on the face of the contract.

      *iii.*    **Section 1605**

The TILA generally requires a creditor in a consumer transaction to disclose, among other things: "(1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (citing *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)).

Section 1605(a) defines a finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." The finance charge includes such amounts as interest, service charges, and borrower-paid broker fees. *Id*. "Failure to disclose the total finance charge not only affords the consumer a remedy of statutory damages but also constitutes a material violation entitling the consumer to rescind the loan." *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 899 (3d Cir. 1990).

Here, Plaintiff cites § 1605 as a basis for her lawsuit but makes no factual allegations whatsoever that are specific to the finance charge listed on each contract. Construing her Complaint in the most favorable possible light, the closest Plaintiff comes to addressing the finance charges is to call the contracts "fraudulent." (Compl. at 3). However, this is a mere conclusory statement that is not entitled to the assumption of truth. *See Santiago*, 629 F.3d at 130.

Because the Court can identify no well-pleaded factual allegations regarding Plaintiff's claim under § 1605, Plaintiff fails to state a claim on which relief can be granted. That claim is dismissed.

### B. Fair Debt Collection Practices Act Claims

To analyze Plaintiff's FDCPA claims, the Court will explicitly address each of the three steps laid out by the Third Circuit in *Santiago*. We begin by identifying the elements required to state a claim under the FDCPA.

The FDCPA, as its name suggests, applies to "debt collectors," defined as any entity that "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Act "creates a private right of action against debt collectors who fail to comply with its provisions." *Arroyo v. Stoneleigh Recovery Assocs., LLC*, 2019 WL 13256646, at *3 (D.N.J. Aug. 14, 2019). "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

Next, we look at the Complaint's allegations and weed out the conclusory statements from the actual, well-pleaded facts. In her Complaint, Plaintiff makes two allegations that could relate to debt collection activities. First, she states that her vehicles were "disabled due to dispossession of property." (Compl. at 3). Second, she accuses Defendant of causing her to make "unlawful payments on a fraudulent contract." (*Id.*). The latter statement is clearly conclusory; it

contains no factual content as to why the payments were unlawful or the contract fraudulent. That leaves only the first statement, which tells us nothing more than that her vehicles were at some point taken out of her possession.

Finally, at the third step, after stripping away the conclusory statements, we do not find enough well-pleaded factual allegations to plausibly give rise to an entitlement for relief against Defendant. Plaintiff's mere statement that she was dispossessed of her vehicles does not plausibly establish that Defendant meets the FDCPA's definition of a debt collector, which Defendant denies, (Def.'s Brief at 6); that taking the vehicles involved an attempt to collect a debt; that Defendant itself took the vehicles; or that the FDCPA was violated in taking the vehicles. Plaintiff's FDCPA claims must be dismissed.

### C. Civil Rights and Fraud Claims

Plaintiff alleges that Defendant "violated my civil rights by causing me to make unlawful payments on a fraudulent contract." (Compl. at 3). Defendant argues the fraud claim should be dismissed for failure to satisfy the specificity requirements of Federal Rule of Civil Procedure 9(b). (Def.'s Brief at 6–7).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The rule has been interpreted as a "heightened pleading requirement" that compels plaintiffs to:

> state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged and plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Alpizar-Fallas v. Favero*, 908 F.3d 910, 918–19 (3d Cir. 2018) (internal quotation marks and punctuation omitted).

Here, Plaintiff's allegation in her Complaint is conclusory. Plaintiff provides no factual context as to which civil rights she is referring. Likewise, she alleges no facts as to how the payments might be unlawful or the contract fraudulent beyond the statutory bases for liability discussed above. Therefore, the complaint does not contain enough factual matter as to a civil rights violation to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. As for the fraud claim, Defendant is correct that Plaintiff's Complaint fails to satisfy the heightened pleading requirement of Rule 9(b), just as it fails to allege a plausible claim for relief under even the more lenient standards of Rule 8.

Accordingly, Plaintiff's civil rights and fraud claims must also be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 19) is **GRANTED**. Plaintiff's TILA claim under 15 U.S.C. § 1635 is **DISMISSED WITH PREJUDICE**. Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff may move for leave to file an amended complaint that provides a stronger factual basis for the remaining claims within thirty (30) days of this Opinion's entry.

An appropriate Order follows.


Dated: __January 3, 2024__                                  /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge